*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ASTAVIAN DNTAE MCMILLIAN,

       Defendant-Appellant.

UNPUBLISHED
March 11, 2021

No. 350665
Kent Circuit Court
LC No. 18-009549-FH

Before: REDFORD, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his conviction of possession of a controlled substance (cocaine) less than 25 grams, MCL 333.7403(2)(a)(*v*). Defendant was found guilty after a three-day jury trial. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 6 to 15 years' imprisonment. Defendant argues that his sentence was an unreasonable departure from the guidelines range and violated the principle of proportionality. Defendant further argues that the trial court abused its discretion by admitting evidence of a detective's testimony regarding the location of a key witness, and that the trial judge's response to an objection violated the principle of impartiality. In a Standard 4 brief, defendant argues that the police did not have probable cause to execute a search warrant. We affirm.

Detectives with the Grand Rapids Police Department received information from multiple confidential sources regarding defendant. This information led them to conduct surveillance on defendant's apartment. While conducting surveillance, a detective saw defendant enter the apartment's garage with another individual for approximately 10 to 15 seconds. After that, the individual left, and defendant went back into the apartment. Detectives determined that the other individual had a history of drug offenses, including possession with intent to deliver cocaine and heroin over 50 grams. The detectives were aware that defendant also had a history of drug offenses.

On the basis of this information, detectives obtained and executed a search warrant on defendant's apartment and garage. Defendant's girlfriend was present in the apartment when the

search warrant was executed; defendant was not. In the garage, detectives found cocaine in multiple places. Defendant's driver's license was found near the cocaine.

The garage is located in a single building, separate from the apartment, but attached to garages for the other apartments in the building. The rafters over the garages are accessible by all of the garages. In the rafters over the garage adjacent to defendant's garage, detectives found a large amount of cocaine. This was accessible from defendant's garage. The occupant of the neighboring garage denied any knowledge of the cocaine, and her garage appeared as though it had not been used recently.

Defendant was charged with delivery or manufacture of a controlled substance (cocaine), 50 to 450 grams, MCL 333.7401(2)(a)(*iii*); possession of a controlled substance (cocaine), 50 to 450 grams, MCL 333.7403(2)(a)(*iii*); felon in possession of a firearm, MCL 750.224f; second or subsequent drug offense, MCL 333.7413(2); felony-firearm, MCL 750.227b(1); and possession of a controlled substance (cocaine), less than 25 grams, MCL 333.7403(2)(a)(*v*). At trial, defendant was found guilty of only possession of a controlled substance (cocaine), less than 25 grams.

## I. UPWARD DEPARTURE FROM SENTENCING GUIDELINES

Defendant first argues that the trial court erred by imposing an out-of-guidelines sentence that exceeded the maximum recommended sentence by 50%. We disagree. The proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 477; 902 NW2d 327 (2017) (*Steanhouse II*). The trial court abuses its discretion if it violates the principle of proportionality "by failing to provide adequate reasons for the extent of the departure sentence imposed . . . ." *Id.* at 476.

A trial court is required to calculate and consider the recommended sentencing guidelines range when determining a defendant's sentence. *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). However, the court is not required to impose a minimum sentence within the guidelines range. *Id.* at 365. The sentence range calculated under the guidelines is advisory only. *Id.*

A sentence that departs from the recommended guidelines range may be imposed when the trial court determines that the recommended range is disproportionate to the seriousness of the crime. *People v Steanhouse (On Remand)* 322 Mich App 233, 238; 911 NW2d 253 (2017) (*Steanhouse III*), vacated in part on other grounds *People v Steanhouse*, 504 Mich 969; 933 NW2d 276 (2019) (*Steanhouse IV*). Sentences that depart from the recommended guidelines range are reviewed by appellate courts for reasonableness. *Lockridge*, 498 Mich at 392.

*Steanhouse II*, 500 Mich at 459-460 directs us to apply the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). Factors that may be considered under the principle of proportionality standard include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct

while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation.  [*Steanhouse III*, 322 Mich App at 238-239.]

In reviewing a sentence, we must evaluate whether reasons exist that justify departure from the recommended guidelines range and whether the extent of the departure satisfies the principle of proportionality. *Id*. at 239.  "[E]ven in cases in which reasons exist to justify a departure sentence, the trial court's articulation of the reasons for imposing a departure sentence must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*.

In explaining its sentence, the trial court cited three issues.  First, the trial court stated that the guidelines did not adequately account for defendant's 21 prior convictions.  "This Court has affirmed upward departure sentences where the minimum sentencing guidelines did not adequately account for a defendant's prolific criminal history, recidivism, and poor prospects for rehabilitation." *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369, rel'd 12/22/2020); slip op p 16.  Defendant's convictions are sorted into four prior record variable (PRV) categories.  For PRVs 1, 3, and 5, defendant's scores are in categories lower than the highest category.  Moving to a higher category would require more convictions.  Therefore, these PRV scores account for all defendant's convictions that fall into those categories.  PRV 2 was scored in the highest category, indicating "4 or more low-severity felonies."  Because this is the highest category, it is possible that this score does not account for all of defendant's convictions for low-severity felonies.

The trial court's second factor is that defendant "failed probation" four times.  This could reasonably be viewed as a negative factor not accounted for by the guidelines.  That is, it is relevant that defendant had been given past opportunities to reform his conduct and failed to take advantage of those opportunities.

The final factor referred to by the trial court is that this is defendant's eighth drug offense.  While to some extent these prior offenses are considered in defendant's PRV scores, those scores do not necessarily fully account for an extensive pattern of criminal conduct of the same nature.

"[E]ven in cases in which reasons exist to justify a departure sentence, the trial court's articulation of the reasons for imposing a departure sentence must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse III*, 322 Mich App at 239.  If a trial court does not clearly address its reasons for the extent of the departure, we may not substitute its own judgment regarding the justifications relied upon by the trial court. *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008).  Under the sentencing guidelines, the defendant's recommended maximum-minimum sentence for possession of cocaine, less than 25 grams is 34 months.  The minimum sentence of 6 years (72 months) imposed by the trial court is an increase of 50% over the maximum sentence indicated by the guidelines range.

The trial court explained its sentence as follows:

You're 32 years old, sir.  Your record is absolutely terrible.  You have six prior felonies, 15 prior misdemeanors and a juvenile court record.  You've

been involved with the court system for at least half of your life, it started in 2003 when **you** were 16 years old. You have had six different jail sentences, you've been placed on probation several times and four of those you have had your probation revoked. That tells me you're not the type of individual that would be successful on probation.

You've been to prison before, and as I review your record this is your eighth drug case. This was involving a search warrant at your girlfriend's apartment where you were staying. There was a garage stall that was part of a building with other garages and there was cocaine that was found on the bench along with your driver's license in that area. And then in the rafters there was a large amount of cocaine. There was a gun found that had your DNA in it, but you were found not guilty by the jury of the gun charge.

Your sentencing guidelines call for a minimum sentence between 2 and 34 months. I am aware of People v Lockridge. It says guidelines are now advisory only in the State of Michigan, that I need to impose a reasonable sentence and one that is proportionate under People v Melbourne [sic]. I am of the opinion that I am imposing a reasonable and proportionate sentence. Also I am aware of People v Tanner that says that the minimum may be no more than two-thirds of the maximum and in this case that would be 10 years.

I do not believe that the guidelines take into effect the fact that you've had 21 convictions. I do not believe that the guidelines take into effect that you've failed probation four times. I do not believe that the guidelines take into effect that you have--that this is your eighth drug conviction.

We are satisfied with the trial court's explanation of the sentence and its reasons for imposing an out-of-guidelines sentence.

## II. EFFORTS TO SECURE WITNESS

Defendant next argues that the trial court abused its discretion by allowing testimony regarding the detective's attempts to locate defendant's girlfriend. We disagree.

"A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "However, whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *Id*. Admission of evidence that is inadmissible is an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

To be admissible, evidence must be relevant. MRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Further, relevant evidence may be excluded. MRE 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

-4-

or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible. It is only when the probative value is substantially outweighed by the danger of unfair prejudice that evidence is excluded." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). "Unfair prejudice" is "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995) (quotation marks and citation omitted).

In this case, defense counsel objected to the detective's testimony regarding attempts to locate defendant's girlfriend, stating that this testimony should be excluded because it was irrelevant. Defendant also argued that this testimony was unfairly prejudicial because it created an inference that defendant was responsible for her absence. The trial court allowed the questioning of the detective on this topic, answering defense counsel's objection by suggesting that he could cross-examine the detective on this subject.

A gun that was found in the apartment shared by defendant and his girlfriend was registered to the girlfriend. Defendant's DNA was found on the gun. Furthermore, because they shared the apartment, including the garage, she could be assumed to have had access to the cocaine. She was present during the execution of the search warrant. Had she been present for trial, her testimony would have been directly relevant to whether defendant possessed the gun and the cocaine. Because she is an important witness, attempts to secure her testimony are also relevant and probative to these issues. See *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004) ("A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence.").

Defendant has not shown that the inclusion of this evidence was unfairly prejudicial. Because the testimony merely involved attempts to locate a key witness who was unavailable at trial, the inclusion of the detective's testimony did not involve extraneous considerations invoking the jury's bias, sympathy, anger, or shock. Further, the testimony was not given undue weight in light of the other evidence presented. See *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008) ("Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence."). Defendant was acquitted of both charges involving the gun, as well as the major cocaine charges. Defendant was convicted of possession of the smaller amounts of cocaine found in the garage. Because defendant's driver's license was found in close proximity to the cocaine in the garage, the jury could have reasonably concluded that the cocaine belonged to defendant on the basis of that fact alone, regardless of any testimony Berry would have given or efforts taken to locate her. Therefore, the trial court did not abuse its discretion by allowing this testimony.

## III. JUDICIAL IMPARTIALITY

Defendant argues that the trial court's comments in response to an objection reflected bias on the part of the court and denied defendant a fair trial. We do not find that these comments, in the context in which they were made, demonstrate judicial bias or impropriety; however, we will

address the issue because even if there were error by the trial court, which we do not believe there was, the defendant would not be entitled to relief as a result. Because the isolated comments did not directly involve the elements of the offense for which defendant was convicted, and because the jury was instructed not to treat judicial comments as evidence, defendant was not denied a fair trial on the basis of these remarks.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). Because defendant failed to preserve the issue of judicial misconduct by objecting at trial, we review the trial court's conduct for plain error affecting substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

When claiming judicial bias, a defendant bears the burden to overcome a "heavy presumption of judicial impartiality." *People v Willis*, 322 Mich App 579, 588; 914 NW2d 384 (2018).

> A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. When the issue is preserved and a reviewing court determines that the trial judge's conduct pierced the veil of judicial impartiality, the court may not apply harmless-error review. Rather, the judgment must be reversed and the case remanded for a new trial. [*Stevens*, 498 Mich at 164.]

A single instance generally will not create the appearance of bias, although "a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*. at 171. "Because it is well established that jurors are presumed to follow their instructions, a curative instruction will often ensure a fair trial despite minor or brief inappropriate conduct." *Id*. at 177 (quotation marks and citation omitted).

In this case, defendant's claim that the judge's conduct pierced the veil of judicial impartiality and violated defendant's constitutional guarantee of a fair trial is based entirely on the following colloquy:

> [*Defense Counsel*]: I'm going to object, there's an insinuation that my client had something to do with this. She showed up to court here to testify in the [] trial a couple months ago.
>
> *The Court*: Counsel, are you testifying now?

[*Defense Counsel*]: No, I'm objecting because there's an insinuation that my client is involved.

*The Court*: The only one that's made any insinuation is you, Counsel. Go ahead and proceed.

\* \* \*

*Q*. While we do not have contact with her have you learned since yesterday of any information that the defendant, in fact, has contact with her?

*A*. Yes. There's been at least five phone calls. One of the techniques in our job is we listen to a lot of jail calls. We listened to five calls, at least five calls made from [defendant] to that number that we have identified as her, as [defendant's girlfriend]. So within the last 24 hours—within the last 24 hours he's contacted her at least five times.

Defendant claims that he was prejudiced by the trial court's comments that defense counsel was "testifying" and that "the only one that's made an insinuation is you." Defendant also states that the judge improperly allowed the testimony regarding the phone calls, which contained the very insinuation that defense counsel objected to. Defendant claims that the judge's remarks, combined with the testimony left the jury with the impression that defendant attempted to ensure that the witness did not testify.

Although the admission of the comments and the testimony by the detective establishes that defendant was in contact with his girlfriend, there is no specific mention that defendant was advising her not to testify. Whether she was available to testify is not a central issue in this case. Defendant was found guilty of possession of less than 25 grams of cocaine. This conviction was supported by the presence of cocaine in the garage associated with the apartment where defendant was living, and that cocaine was found in close proximity with defendant's driver's license. Although the witness may have had knowledge of the cocaine in the garage, she was more likely to have had firsthand knowledge of the questions involving the gun. Because defendant was acquitted of all charges related to the gun, as well as the major charges related to the cocaine, he could not have been prejudiced by the judge's statement or the testimony related to the phone calls.

Moreover, the trial court instructed the jury at the beginning and end of the trial regarding how to treat its comments. See *id*. In the preliminary jury instructions, the judge stated:

My responsibilities as judge in this trial are to make sure that the trial is run fairly and efficiently, to make decisions about evidence and instruct you on the law that applies in this case. You must take the law as I give it to you, nothing I say is meant to reflect my own opinion about the facts of this case.

In the closing jury instructions, the judge stated, "My comments, rulings, questions and instructions are also not evidence." Because jurors are presumed to follow instructions, the instruction given alleviated any claim of error arising from the trial court's comments.

Therefore, defendant failed to show how the trial court's comments deprived him of a fair trial. See *id*. at 171.

## IV. PROBABLE CAUSE

Defendant makes a constitutional argument that the surveillance of defendant's apartment was unsupported by sufficient evidence to establish probable cause. We disagree.

Review of a search warrant "requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *People v Whitfield*, 461 Mich 441, 445-446; 607 NW2d 61 (2000). "To provide adequate support for a warrant, the affidavit need not *prove* anything." *Id*. at 445. "Probable cause sufficient to support issuing a search warrant exists when all the facts and circumstances would lead a reasonable person to believe that the evidence of a crime or the contraband sought is in the place requested to be searched." *People v Brannon*, 194 Mich App 121, 132; 486 NW2d 83 (1992).

In this case, the police officer received information from multiple informants about defendant. On the basis of that information, the police conducted surveillance of defendant's apartment for a period of approximately one month. While conducting surveillance, the police saw defendant and another individual enter defendant's garage for approximately 10 to 15 seconds. After determining that the individual's criminal history included multiple convictions for drug related offenses, including possession with intent to deliver cocaine or heroin over 50 grams, and already having an awareness of defendant's criminal history including numerous drug offenses, the police received and executed a search warrant. These facts gave the police a reasonable suspicion that drug activity was taking place in the defendant's garage or apartment, leading the detective to obtain a search warrant. Therefore, defendant's argument that there was insufficient probable cause for a search warrant is without merit.

Affirmed.

/s/ James Robert Redford
/s/ David H. Sawyer
/s/ Mark T. Boonstra